IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | 8:11CR65 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| DOUGLAS I. SUING, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's objection, Filing No. 51, to the Findings and Recommendation ("F&R") of the magistrate judge. *See* Filing No. 47 and Filing No. 48. The magistrate judge recommended denial of defendant's motion, Filing No. 25, to suppress. The defendant has been charged with production/manufacturing of child pornography (Count I), receipt and distribution of child pornography (Count II), and possession of child pornography (Count III), in violation of 18 U.S.C. §§ 2251(a), 2252A(a)(2), and 2252(a)(4)(B). Filing No. 1, Indictment.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the court has conducted a de novo determination of those portions of the F&R to which the defendant objects. *United States v. Lothridge,* 324 F.3d 599, 600-01 (8th Cir. 2003). The court has reviewed the record including the transcript of the hearing on the motion to suppress on August 15, 2011, and the exhibits submitted during the hearing, and concludes that it will adopt the findings and recommendation of the magistrate judge.

**I. BACKGROUND**

The court adopts the factual findings of the magistrate judge. The facts are set forth in the F&R, Filing No. 48 at 2-6, and they will be repeated only as necessary to this

opinion.  Briefly, the defendant, Douglas Suing, was stopped on January 21, 2011, by Deputies of the Navajo County Sheriff's Office, pursuant to AZ ST § 28-730, for following another vehicle too closely while Suing was driving in northern Arizona.  After running a radio check on Suing and Suing's vehicle for wants and warrants, Deputy Davis issued Suing a warning citation.  Deputy Davis then asked Suing for consent to search Suing's vehicle.  Suing agreed and signed a consent to search form that Deputy Davis provided.  While searching Suing's vehicle, Deputy Davis suspected Suing's vehicle had hidden compartments that could conceal drugs.  Deputy Davis then deployed his canine.  The canine alerted to two different locations in Suing's vehicle.  Following a telephone conversation with his supervisor, Deputy Davis transported Suing to the Sheriff's office and another deputy drove Suing's vehicle to the Sheriff's office.  Upon arrival, Suing was placed in an interview room without handcuffs and Suing's vehicle was searched again.

During the search at the Sheriff's office, deputies found an external computer hard drive in a bag on the front passenger seat.  Deputies have previously encountered drug records and photographs contained in external hard drives.  The external hard drive was given to Deputy Peterson to examine for drug-related content.  Deputy Peterson plugged the external hard drive into his computer and downloaded the files.  Deputy Peterson opened a folder, which contained several secondary folders, and then opened the first secondary folder.  Contained within the first secondary folder were several thumbnail photographs of which appeared to be pornographic pictures of young boys.

Upon viewing what appeared to be pornographic pictures of young boys, Deputy Peterson immediately shut the computer down. Deputy Peterson told Deputy Murray about the pictures and Deputy Murray consulted a deputy Navajo County attorney for advice in

how to proceed. The deputy county attorney advised the sheriff deputies to obtain a search warrant for the external hard drive. Sheriff Deputies Murray and Davis, following the deputy county attorney's advice, prepared an application for a search warrant. A Navajo County Superior Court judge issued a search warrant authorizing the Sheriff to search Suing's external hard drive for the presence of child pornography. Deputy Peterson then searched Suing's external hard drive and found thousands of pictures of child pornography.

The Navajo County Sheriff's Office contacted the Federal Bureau of Investigation to see if the FBI was interested in the case. The FBI was interested and FBI Agent Davenport traveled to the Navajo County Sheriff's Office. Sheriff deputies briefed Agent Davenport upon his arrival. Subsequently, Agent Davenport decided to interview Suing. Agent Davenport advised Suing of his *Miranda* rights, Suing stated he understood them, and then agreed to speak with Agent Davenport. Agent Davenport attempted to elicit consent to a search of Suing's external hard drive. Suing refused to consent to a search of his hard drive. At several times during the interview, Suing mentioned a lawyer. When Agent Davenport asked Suing if he wanted to continue talking, Suing continued to talk. Later in the interview, Suing unequivocally said he wanted to speak with a lawyer, at which time Agent Davenport ended the interview.

Suing had previously been suspected of possessing child pornography. In December 2009, the FBI Cyber Crimes Task Force obtained information regarding the subscriber to an IP address that was known to have files containing child pornography. Suing subscribed to that IP address. In May 2010, a subpoena from the Douglas County Attorney was issued to Cox Communications in order to obtain information regarding

Suing.  On January 24, 2011, an additional subpoena from the Douglas County Attorney was issued to Cox Communications to obtain the latest IP information on Suing.

Investigator Malicky of the Nebraska State Patrol discovered Suing's recent arrest in Arizona and contacted Agent Davenport.  Investigator Malicky subsequently applied for a federal search warrant in Omaha and included details of Suing's Arizona arrest in his affidavit for the Omaha search warrant.  United States Magistrate Judge F.A. Gossett issued a search warrant for Suing's residence in Omaha, Nebraska, on January 24, 2011.  That search warrant was executed the next day, January 25, 2011, and several items were seized from Suing's residence.  After reviewing the seized items, investigators determined additional items in Suing's residence should also be seized, including a camera.  Investigator Malicky applied for and received another federal search warrant on January 27, 2011, in order to return to Suing's residence and seize additional items.  That search warrant was executed the same day, January 27, 2011, and additional items were in fact seized, including a camera.

## II. DISCUSSION

### A. The Traffic Stop

The court agrees with the magistrate judge's findings that the traffic stop was legal.  A traffic stop amounts to a seizure for Fourth Amendment purposes.  *United States v. Frasher,* 632 F.3d 450, 453 (8th Cir. 2011).  A traffic stop is a reasonable seizure if it is supported by a "reasonable, articulable suspicion that criminal activity" is occurring.  *Id.*  "A traffic violation, however minor, provides probable cause sufficient to satisfy the constitutional reasonableness requirement."  *Id.*  And when an officer has probable cause, "the stop is objectively reasonable and any ulterior motivation on the officer's part is

irrelevant." *Id., citing United States v. Arciniega,* 569 F.3d 394, 397 (8th Cir. 2009). The magistrate judge correctly noted, "following too closely is a traffic violation under Arizona law." Filing No. 48 at 6. Deputy Davis testified that Suing was following too closely. *Id*. at 61. The court credits Deputy Davis's testimony regarding the traffic stop. The traffic stop was legal and supported by probable cause.

### B. The Consent Search

As an initial matter, the court agrees with the magistrate judge's findings that Suing did not revoke or limit his consent to search until he objected to an examination of his external hard drive. This court agrees with the finding of the magistrate judge that Suing voluntarily consented to a search of his vehicle. As the magistrate judge properly noted, "[c]onduct withdrawing consent must be an act clearly inconsistent with the apparent consent to search, an unambiguous statement challenging the officer's authority to conduct the search, or some combination of both." *United States v. Sanders,* 424 F.3d 768, 774 (8th Cir. 2005). Suing made no such act or statement until he unequivocally refused to consent to a search of his external hard drive. Suing argues he revoked his consent when he stated "whoa" to the deputies. The court finds Suing's statement of "whoa" was not an act clearly inconsistent with the apparent consent to search or an unambiguous statement challenging the [deputies'] authority to conduct the search.

Suing objects to the magistrate judge's finding that the scope of his consent was not limited to drugs, drug paraphernalia, or guns, or any location where those items might be found. With respect to the scope of Suing's consent, "[a] consensual search cannot exceed the scope of consent given." *United States v. Rudolph,* 970 F.2d 467, 468 (8th Cir. 1992). The standard for determining the scope of consent is "that of 'objective'

reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno,* 500 U.S. 248, 251 (1991). "The scope of a [consent] search is generally defined by its expressed object." *Id.*

The court agrees with the magistrate judge's implicit finding that the scope of Suing's consent included the external hard drive and its contents. The court finds that even if, *arguendo,* the scope of Suing's consent was limited to drugs, the search of the external hard drive still would have been legal because the Arizona deputies lawfully searched the external hard drive for evidence of illegal drug activity, and after they inadvertently discovered child pornography, they immediately ceased their search efforts and obtained a new warrant to search for evidence of child pornography.

Suing relies on a case from the Tenth Circuit, *United States v. Carey,* 172 F.3d 1268 (10th Cir. 1999). In *Carey,* the police had a warrant to search computer files for evidence of illegal drug transactions. An officer inadvertently discovered a computer image containing child pornography. The officer did not stop his search and did not obtain a new search warrant for evidence of child pornography. Instead, the officer continued searching pursuant to the drug-related warrant related and downloaded over 200 image files containing child pornography. The court did not suppress the first file, which the officer discovered inadvertently. The court did, however, suppress the other 200 files because the officer abandoned the object of the authorized search—evidence of illegal drug trafficking.

Assuming, *arguendo,* Suing's consent was limited in scope to only drugs, drug paraphernalia, guns, or any location where those items might be found, the court is persuaded that the search of the hard drive would still have been legal under the rule

promulgated in *United States v. Walser,* 275 F.3d 981 (10th Cir. 2001). In *Walser,* an agent discovered evidence of child pornography on the defendant's computer while the agent was executing a search warrant for evidence of drug activity. *Id.* at 983-85. In *Walser,* the Tenth Circuit determined the agent did not exceed the scope of the search warrant, because the agent discovered the child pornography inadvertently and the agent stopped his search immediately and obtained a new search warrant for evidence of child pornography. *Id.* at 986-87.

The Eighth Circuit Court of Appeals addressed similar issues in *United States v. Hudspeth,* 459 F.3d 922 (8th Cir. 2006), *rev'd in part and reinstated in part,* 518 F.3d 954 (8th Cir. 2008). There, officers were searching for evidence of illegal pseudoephedrine distribution pursuant to the defendant's consent when the officers discovered images of child pornography stored on compact discs. *Id.* at 928. The officer stopped his search and obtained a new warrant to search for evidence of child pornography. *Id.* The court determined the officer properly stopped his search and obtained a new search warrant and thus, his search was within the scope of consent. *Id.*

In this case, Deputy Peterson was searching Suing's external hard drive for evidence of drug-related activity pursuant to Suing's consent. During that search, Deputy Peterson inadvertently discovered what appeared to be images of child pornography. The court notes Deputy Peterson did not open any of the files that appeared to be child pornography. Instead, Deputy Peterson viewed thumbnail icons of the images and immediately shut the computer down and applied for a warrant to search the hard drive for the presence of child pornography. Accordingly, the court agrees with the magistrate judge's findings in that the search warrant for the hard drive was lawful.

7

### C. Statements to Agent Davenport

Suing objects to the magistrate judge's finding that his constitutional rights were not violated by his interview with Agent Davenport. The court agrees with the magistrate judge's conclusion for the reasons stated in his opinion. "Invocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis v. United States,* 512 U.S. 452, 459 (1994) (internal citation omitted). "But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, [Supreme Court] precedents do not require the cessation of questioning." *Id.* Here, although Suing mentioned a lawyer several times during the interview with Agent Davenport, those statements were not unambiguous or unequivocal invocations of his right to counsel. Instead, the one time Suing did make an unambiguous and unequivocal request for a lawyer, Agent Davenport promptly ended the interview. The court agrees with the magistrate judge's finding that "Suing's constitutional rights were not violated during the interview." F&R at 9.

### D. Search Warrants

Suing objects to the magistrate judge's finding that the numerous search warrants involved in this case are all lawful. Specifically, Suing objects to: 1) the magistrate judge's finding that the use of the Douglas County Attorney subpoenas by the Chief Deputy Douglas County Attorney was not unlawful; 2) the finding that Suing did not have a reasonable expectation of privacy in his computer records that the Douglas County Attorney sought; 3) the finding that the federal search warrants were based on probable cause; 4)

the finding that the application and affidavit for the federal search warrants did not include state information; and 5) the finding that the federal search warrants would have remained grounded on probable cause regardless of the exclusion of the information obtained in Arizona. The court has considered these objections and finds them to be without merit. The court adopts the findings and recommendations of the magistrate in this regard. Accordingly,

THEREFORE, IT IS ORDERED:

1. The defendant's objection, Filing No. 51, to the Findings and Recommendation of the magistrate judge is overruled.

2. The Findings and Recommendation of the magistrate judge, Filing No. 48, is adopted in its entirety.

3. Defendant's motion to suppress, Filing No. 25, is denied.

DATED this 5th day of December, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.